**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| KATHERINE ARRINGTON | * | |
| | * | |
| Arrington, | * | |
| | * | |
| v. | * | Civil Action No. 21-2669 (JEB) |
| | * | |
| DEPARTMENT OF DEFENSE <u>et al.</u> | * | |
| | * | |
| Defendants. | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION**
<u>**FOR PRELIMINARY AND/OR PERMANENT INJUNCTION**</u>

Plaintiff Katherine Arrington ("Arrington") challenges the failure of Defendants Department of Defense ("DoD"), which is responsible for the Defense Counterintelligence and Security Agency ("DCSA") and the Consolidated Adjudications Facility ("CAF"), as well as the National Security Agency ("NSA")(collectively "Defendants"), to provide her with the minimal due process required by law in response to their actions to revoke her security clearance.

In accordance with the procedures set forth in Rule 65 of the Federal Rules of Civil Procedures and Local Rule 65.1 of this Court, Arrington respectfully requests the issuance of a preliminary and/or permanent injunction against the Defendants to require them to immediately provide the necessary relevant comprehensive details that would enable her to submit a proper substantive response, which is currently due on or before January 3, 2022, to the Statement of Reasons ("SOR") issued on October 28, 2021.

The relief sought here is narrow, completely divorced from any substantive security determination, does not require this Court to exceed its jurisdiction or authority and will not harm the national security interests of the United States.

**FACTUAL BACKGROUND**

Arrington joined DoD in 2019 as a highly qualified expert and has been serving as a civilian employee in the Senior Executive Service since 2020 as the Chief Information Security Officer for Acquisition and Sustainment to the Under Secretary of Defense for Acquisition and Sustainment. First Amended Complaint, Ecf. Dkt. 6, at ¶3 (filed November 11, 2021)("FAC").

On Friday, May 7, 2021, at approximately 9:00 AM EST, Arrington was telephoned and notified that NSA had revoked her access to a certain level of classified information. Later that same day, at approximately 5:00 PM EST, Arrington was notified she was being placed on administrative leave effective immediately. No other details were provided at that time. Id. at ¶6. Several days later, by Memorandum dated May 11, 2021, Arrington was formally notified by a security officer within the Office of the Under Secretary of Defense for Acquisition and Management that her access to classified information was suspended. It was noted that this "action is being taken as a result of a reported Unauthorized Disclosure of Classified Information and subsequent removal of access" by NSA. It also warned Arrington that her actions might have constituted a federal crime. Id. at ¶7; Exhibit "1".

The next day, by Memorandum dated May 12, 2021, Arrington was notified by Deputy Assistant Secretary for Industrial Policy, Jesse Salazar, a political appointee of President Joseph R. Biden's Administration, in the Office of the Under Secretary of Defense for Acquisition and Management, that she was now in a paid, non-duty status given the suspension of her clearance access. FAC at ¶8; Exhibit "2".

Throughout the next six months, Arrington's counsel made numerous good faith attempts with the Defendants to obtain any relevant information as well as facilitate a resolution of the alleged security concerns, including volunteering Arrington to sit for an interview and even a polygraph examination, but all efforts failed. The Defendants also refused to respond to

Arrington's lead counsel's request to be informed of the alleged classified information notwithstanding that he holds the appropriate security clearance eligibility. Id. at ¶9; Declaration of Mark S. Zaid, Esq. at ¶13 (dated November 29, 2021)("Zaid Decl"), at Exhibit "3".[1]

By Memorandum dated October 28, 2021, without ever interviewing Arrington (or for that matter, upon information and belief, interviewing anyone), the DoD CAF issued an SOR proposing revocation of Arrington's eligibility for access to classified information based on Adjudicative Guideline K: Handling Protected Information. Exhibit "4". The SOR cited to four legal references that control the procedural and substantive process by which this security action is governed. Id.; FAC at ¶13. While the SOR noted that the Air Force Office of Special Investigations ("AFOSI") reviewed the details of the incident and concluded on May 13, 2021, that it "could not identify any nefarious intent which would warrant a criminal or counterintelligence investigation at this time," no substantive facts were provided – in violation of the governing laws and regulations that bind the Defendants – that meaningfully permit Arrington to respond to the SOR. Id. at ¶14; Exhibit "4".

For example, Arrington was not informed of the type or nature of the information, which was identified only as "Top Secret", that was disclosed. Nor was Arrington even told the date upon which the alleged incident occurred or provided specific identification of the person or entity to whom Arrington allegedly released this classified information. In fact, not one additional substantive fact was provided beyond what was stated in the initial suspension memorandum dated May 11, 2021. Cf. Exhibit "1" to Exhibit "4". No reference was made in the SOR that this

---

[1] Arrington respectfully requests this Court set a hearing on her application for no later than twenty-one days from the filing. LCvR 56.1(d). The undersigned counsel's declaration, see Exhibit "3", contains the relevant statement of the facts which make expedition essential under this District's Local Rules.

information could not be provided, or that available binding due process procedures were not available due to classification concerns. Id.; FAC at ¶15.

Additionally, the SOR also alleged that Arrington failed to personally report the alleged security violation, "as required", but no supporting citation was identified to demonstrate what requirement was violated. Exhibit "4". The most basic facts underlying the SOR were completely withheld from Arrington in contravention of numerous applicable laws. FAC at ¶16.

Although the circumstances surrounding the allegations against Arrington occurred in May 2021, and while AFOSI was able to sufficiently review the situation in just a matter of days in order to determine that no criminal or counterintelligence investigation was warranted, the Defendants suspiciously refused to conduct even a routine substantive investigation of the allegations. Not even Arrington herself was interviewed, much less asked to be interviewed, even though it was offered. Indeed, upon information and belief, the entire matter could have been easily resolved within a week or two at most through a handful of interviews of key witnesses, all of whom are known to the Defendants. Id. at ¶19.

At this stage all Arrington wants is a fair opportunity to substantively respond to the allegations through the standard administrative process that governs security clearances and clear her good name. Although, as noted, multiple efforts were made by Arrington's counsel to avoid this litigation and this filing, the Defendants refused to cooperate in any way thereby forcing this unusual step. Id. at ¶20; Zaid Decl. at ¶13.

## **PROCEDURAL BACKGROUND**

This litigation was initially filed on October 11, 2021, Ecf. Dkt. 1, to challenge the unreasonable delay of the Defendants to resolve any existing concerns or compel them to issue

an SOR. The U.S. Attorney's Office for the District of Columbia was served with the Summons and Complaint on October 21, 2021. Ecf. Dkt. 4.

Once the SOR was issued on October 28, 2021, Arrington filed a FAC, Ecf. Dkt. 6, on November 11, 2021, to amend the lawsuit to challenge the Defendants failure to comply with their own binding regulations and law. No Answer, responsive pleading or even an appearance by counsel for the Defendants has occurred.

## **LEGAL STANDARD**

In order to prevail on a motion for a preliminary injunction, the movant must show four factors: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). See also League of Women Voters of United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)(identifying four factors). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citations omitted). The moving party must demonstrate a likelihood of success on the merits, id., and some injury, as "[t]he basis of injunctive relief in the federal courts has always been irreparable harm." Sampson v. Murray, 415 U.S. 61, 88 (1974), quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959).

In the past, courts in this Circuit have applied a "sliding scale" approach in analyzing the four preliminary injunction factors, meaning "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009), citing Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir.1999). Candidly, it is not

clear whether this approach has survived <u>Winter</u> as the circuit courts have split on the question whether "sliding scale" tests of this nature remain viable, or whether instead a movant must always show that he or she is mathematically likely to succeed on the merits. <u>Compare</u> <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1130–35 (9th Cir. 2011)(sliding scales survive <u>Winter</u>); <u>Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 598 F.3d 30, 35–38 (2d Cir. 2010)(same), <u>and</u> <u>Hoosier Energy Rural Elec. Coop. v. John Hancock Life Ins. Co.</u>, 582 F.3d 721, 725 (7th Cir. 2009)(same), <u>with</u> <u>Real Truth About Obama, Inc. v. FEC</u>, 575 F.3d 342, 347 (4th Cir. 2009)(reading <u>Winter</u> to require that movants always establish they are likely to succeed on merits). Panels of the D.C. Circuit have suggested that they might side with the Fourth Circuit, <u>see</u> <u>e.g.</u>, <u>Sherley v. Sebelius</u>, 644 F.3d 388, 393 (D.C. Cir. 2011), but to date this Circuit "has not yet needed to decide this issue," <u>League of Woman Voters of the United States v. Newby</u>, 838 F.3d 1, 7 (D.C. Cir. 2016).

Frankly, this Court need not decide the issue because under either approach Arrington is entitled to preliminary, if not permanent, relief. But should it determine the need to take a position, it should apply this Circuit's longstanding precedent, which has not been disavowed, and stand with the Circuits that have held that sliding scales survive <u>Winter</u>.

<u>Winter</u> rejected the Ninth Circuit's incredibly lenient standard that allowed for the grant of an injunction based only on the "possibility" of irreparable harm. 555 U.S. at 21-22. Justice Ginsburg noted in dissent that the majority opinion did not, in fact, overturn courts' longstanding practice of applying sliding scales, a contention that the majority never refuted. <u>See</u> 555 U.S. at 51 (Ginsburg, J., dissenting)("Consistent with equity's character, courts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high... . . This Court has never rejected that

6

formulation, and I do not believe it does so today."). The majority never refuted that contention, and recent developments suggest Justice Ginsburg was correct. The standard governing stays pending appeal is the same as the standard governing preliminary injunctions articulated in Winter. See Nken v. Holder, 556 U.S. 418, 434 (2009)(articulating four factors governing stays pending appeal and citing Winter); id. at 443 (Kennedy, J., dissenting)("it is revealing that the standard that the Court adopts for determining whether a stay should be ordered is the standard that is used in weighing an application for a preliminary injunction"). In Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080 (2017), the Supreme Court granted a stay pending certiorari based entirely on an analysis of the balance of the equities, with no discussion at all of the movant's chances of succeeding on the merits. Id. at 2087. It noted there that "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981), but to balance the equities as the litigation moves forward." Id. Winter simply stands for the proposition that there must be more than a mere "possibility" of each of the four factors required for injunctive relief.

In any event, under either approach, the movant must always show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995).

Arrington, of course, acknowledges that the standard for irreparable harm is particularly high in the D.C. Circuit. "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm." Power Mobility Coal. v. Leavitt, 404 F. Supp. 2d 190, 204 (D.D.C. 2005), quoting Wis. Gas Co. v. FERC, 758 F.2d 669,

674 (D.C. Cir. 1985)(internal quotation marks omitted)(emphasis in original). Additionally, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" Elec. Privacy Info. Ctr. v. DOJ, 15 F. Supp. 3d 32, 44 (D.D.C. 2014)(citation omitted).

The movant must also provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." Wis. Gas Co., 758 F.2d at 674 (internal quotation marks and citation omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the Plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

As these authorities make clear, to meet the standard for irreparable harm the movant must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation. Arrington here has sufficiently met each and every burden. Therefore, the Court should respectfully grant the requested relief.

## ARGUMENT

## I. THIS COURT HAS JURISDICTION TO HEAR AND ADJUDICATE THIS DISPUTE

Before the Court considers the substance of the arguments below, the 800 pound gorilla in the room should be addressed to ensure this dispute does not become tangled in irrelevant distractions. The issue in this case has nothing to do with the wall established by, or at least the obstacles interpreted from the ruling in, Department of Navy v. Egan, 484 U.S. 518 (1988). Arrington is not seeking to challenge the view that "the grant of security clearance to a particular

employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." Id. at 527; accord Oryszak v. Sullivan, 576 F.3d 522, 525-26 (D.C. Cir. 2009). This dispute does not involve the propriety of any clearance decision by any agency. Indeed, no such decision has yet been rendered. The law – unfortunately – continues to remain federal agencies have "broad discretion to determine who may have access" to classified information, and "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment." Egan, 484 U.S. at 529.

Arrington's Motion merely seeks to compel the Defendants to comply with their own regulations and policies, and any other applicable authorities, that are binding as a matter of law during a security clearance administrative process. There can be no dispute that this Court possesses the authority and jurisdiction to do just that. In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), the Supreme Court held that the Attorney General acted improperly in attempting to influence deportation proceedings before the Board of Immigration Appeals ("BIA") despite his prior delegation, by regulation, to the BIA of his discretionary authority under the immigration laws. The Court stated that "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the [BIA] or dictate its decision in any manner." Id. at 267.

As the D.C. Circuit made clear in Battle v. FAA, 393 F.3d 1330, 1336 (D.C. Cir. 2005), Accardi "has come to stand for the proposition that agencies may not violate their own rules and regulations to the prejudice of others." See e.g., Steenholdt v. FAA, 314 F.3d 633, 639 (D.C. Cir. 2003). See also Service v. Dulles, 354 U.S. 363, 372 (1957)(recognizing right of federal courts to review agency's actions to ensure its own regulations have been followed). "[T]his principle holds even when the administrative action under review is discretionary in nature." Id. That

Arrington's case involves a security clearance changes nothing. See Hammond v. Lenfest, 398 F.2d 705, 715 (2nd Cir. 1968)("[T]his is no less so because the governmental action is essentially discretionary in nature."). In fact, "[a] court's duty to enforce an agency regulation[, while] most evident when compliance with the regulation is mandated by the Constitution or federal law, embraces as well agency regulations that are not so required." Lopez v. FAA, 318 F.3d 242, 247 (D.C. Cir. 2003)(internal quotes omitted).

An agency is also, in certain circumstances, obligated to follow its own internal procedures, even when such procedures are not set forth in regulations. See Morton v. Ruiz, 415 U.S. 199, 232-36 (1974)(finding that the Bureau of Indian Affairs violated the APA when it failed to act in accordance with an internal manual requirement that it publish information regarding eligibility criteria for general welfare assistance). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . [t]his is so even where the internal procedures are possibly more rigorous than otherwise would be required." Id. at 235, citing Service, 354 U.S. at 388; see also Teton Historical Aviation Found. v. United States, 248 F. Supp. 3d 104, 111 (D.D.C. 2017)("[I]t is settled law that where an internal agency manual affects the concrete interest of a member of the public, the Court can, and should, require the agency to follow its own procedures by applying the manual itself as a judicially manageable standard.").

"Agencies cannot 'relax or modify' regulations that provide the only safeguard individuals have against unlimited agency discretion in hiring and termination." Id., citing Mazaleski v. Treusdell, 562 F.2d 701, 719 (D.C. Cir. 1977). "[P]roperly promulgated, substantive agency regulations have the force and effect of law." Chrysler Corp. v. Brown, 441 U.S. 281, 295 (1979)(internal quotation marks omitted).

The Administrative Procedures Act ("APA") allows Arrington to challenge the arbitrary and capricious nature of the Defendants' actions. Of course, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). "In other words, the question is not what [the Court] would have done, nor whether [the Court] agree[s] with the agency action," but "whether the agency action was reasonable and reasonably explained." Ams. for Clean Energy v. EPA, 864 F.3d 691, 726 (D.C. Cir. 2017) (internal quotation marks omitted). The Government conceded decades ago that even in national security cases involving classified information legal challenges under the APA are permitted to ensure an agency follows its own regulations. Webster v. Doe, 486 U.S. 592, 602 fn 7 (1988).

Most importantly, the Supreme Court's decisions in Service, 354 U.S. 363, and Vitarelli v. Seaton, 359 U.S. 535, 7 (1959), make clear that federal employees may challenge an agency's compliance with its regulations governing revocation of security clearances. Nothing in Egan overrules those cases, and in fact the principle of those cases has been applied to cases involving federal employee security clearance issues. Palmieri v. United States, 72 F. Supp. 3d 191, 207 (D.C. Cir. 2014). See also Wonders v. Dep't of the Army, 659 Fed. Appx. 646, 648 (Fed. Cir. 2016)(Procedural guarantees can be reviewed in security clearance revocation cases); Duane v. U.S. Dep't of Def., 275 F.3d 988, 993 (10th Cir. 2002)(holding court not precluded from reviewing claim that agency violated own procedural regulations when revoking or denying security clearance); Hesse v. Dep't of State, 217 F.3d 1372, 1376 (Fed. Cir. 2000)(Court can adjudicate whether applicable procedural guarantees were followed in security clearance revocation); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999)(same); Drumheller v.

Dep't of the Army, 49 F.3d 1566, 1569-73 (Fed. Cir. 1995)(reviewing Department of Army regulations related to revocation of security clearances).

In fact, even in litigating Egan the government conceded:

> We agree with the Board that it may examine whether the agency made such a determination [to revoke a security clearance], that is, whether the agency had procedures for denying or revoking clearances and whether the procedures were followed. The Board also could, in an appropriate case, find that a determination was not validly made because the employee was not afforded procedural protections guaranteed to him by the agency's regulations . . . .

Romero v. DoD, 527 F.3d 1324, 1329 (Fed. Cir. 2008), quoting Brief for Petitioner at 24-25.

Thus, the Court has unequivocally clear jurisdiction over the relief requested by Arrington.

## II. ARRINGTON IS LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS

The SOR issued by the DoD CAF cites to four references that grant DoD authority to issue the document and govern the process that the Court can review:

> (a) DoDM 5200.02, Procedures for the DoD Personnel Security Program (PSP), April 3, 2017
> (b) Security Executive Agent Directive 4, National Security Adjudicative Guidelines, December 10, 2016 (Effective June 8, 2017)
> (c) ICD 704, Personnel Security Standards and Procedures Governing Eligibility for Access to Sensitive Compartmented Information, and Other Controlled Access Program Information, October 1, 2008
> (d) ICPG 704.3, Denial or Revocation of Access to Sensitive Compartmented Information, Other Controlled Access Program Information, and Appeals Processes, October 2, 2008

Exhibit "4".

Intelligence Community Policy Guidance 704-3 (D)(1)(a), *https://www.dni.gov/files/ documents/ICPG/icpg_704_3.pdf*, requires the Defendants to provide a "*comprehensive written explanation of the basis*" (emphasis added) of the revocation as the "national security interests of the United States and other applicable laws permit."

Subject to the same caveat regarding the interests of the United States, Paragraph 10.2 of DoDM 5200.02, *https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/ dodm/520002m.pdf*, further requires that the written explanation must be both "*comprehensive*" and "*detailed*" (emphasis added). Paragraph 10.4 further articulates that a "summary of the security concerns and supporting adverse information" must accompany the SOR. In fact, Paragraph 10.4(2) requires that the "*SOR must explain each security concern, state the specific facts that trigger each security concern*, identify the applicable adjudicative guideline(s) for each concern, and provide the disqualifying conditions and mitigating conditions for each adjudicative guideline cited." Id. (emphasis added).

These are, of course, not the complete universe of authorities that apply to this matter. See Ames v. United States Dep't of Homeland Sec., 153 F. Supp. 3d 342, 350 (D.D.C. 2016)("The clearance process for determining access to classified information is governed by Executive Order 12968, 60 Fed. Reg. 40245 (Aug. 2, 1995)", "which establishes an elaborate system of classification designed to protect the national security interests of the United States."). Section 5.2(a)(1) of Executive Order 12968 requires the Defendants to provide "*as comprehensive and detailed a written explanation of the basis for that conclusion* as the national security interests of the United States and other applicable law permit." (emphasis added). Arrington, however, is not relying upon the Executive Order in order to enforce any right or benefit.

At no time has any substantive information been provided to Arrington that would enable her to respond to the Defendants' allegations. Certainly nothing that could be reasonably interpreted as "comprehensive" or "detailed". Zaid Decl. at *passim*. The suspension memorandum issued on May 11, 2021, said nothing more than "This action is being taken as a result of a reported

Unauthorized Disclosure of Classified Information and subsequent removal of access by the National Security Agency (NSA)." Exhibit "1".

Of course, Arrington is not asserting in this proceeding that prior to the issuance of the SOR she was lawfully entitled to any substantive information. But now that the SOR has been issued and she is facing loss of her security clearance and federal employment, her due process rights kick in. The SOR, however, fundamentally fails to meet any established legal standard in violation of binding law thereby justifying the granting of this Motion.

The sole purported facts provided to Arrington in the SOR was as follows:

> According to the OUSD (A&S) memo, your access was suspended because of a "reported Unauthorized Disclosure of Classified Information and subsequent removal of access by the National Security Agency (NSA)." It was alleged that your unauthorized disclosure could constitute a federal crime. The Air Force Office of Special Investigations (AFOSI) reviewed the details of the incident that precipitated the suspension of your access to classified information and, in an email between AFOSI and OUSD (A&S), dated May 13, 2021, noted they "could not identify any nefarious intent which would warrant a criminal or counterintelligence investigation at this time." The matter was deferred back to OUSD (A&S) Security for further review. Further, your attorney noted in an email sent to Ms. Lisa Turner, dated May 21, 2021, that no investigation was being conducted by DCSA or DoD OIG. Regardless of whether a formal investigation was conducted and despite AFOSI's determination there was no criminal intent, you disclosed Top Secret, highly sensitive classified and protected information to unauthorized persons, via electronic means, on an unclassified network, which had the potential to inflict exceptionally grave damage to the national security of the United States. Moreover, there is no evidence to suggest you personally reported this security violation, as required.

Exhibit "4".

This description provides little to no useful or meaningful information that would enable Arrington to provide a substantive response to the SOR. Zaid Decl. at ¶21. At the outset it should be noted that nowhere within the document is there a claim by the Defendants that additional facts could not be provided due to classification concerns. And no doubt for good

reason because most of the relevant information could not be, or at least is likely not to be, classified. Id. at ¶¶17-18.

For example, some of the prominent deficiencies that stand out in the SOR include, but are not limited to, the fact that:

- No unclassified description of the type of information that was allegedly disclosed was provided;
- No identification of the individual to whom Arrington allegedly made the disclosure was revealed;
- No indication of the date upon which the alleged disclosure occurred was stated;
- No indication of any unfavorable results of any investigation, much less of any substantive investigation, that was undertaken;
- No identification of any evidence to demonstrate Arrington improperly disclosed classified information; and,
- No identification of any rules, regulations or policies that required Arrington to report this alleged security violation given the circumstances, had one even been known at the time.

Id.; Exhibit "4".

In Wonders v. Dep't of the Army, No. AT-0752-13-0055-I-1, 121 M.S.P.R. 247, 2014 WL 5319821 (MSPB June 25, 2014), the Merit Systems Protection found that the Army had committed procedural violations in a security clearance revocation case due to its "failure by the CAF to provide Mr. Wonders all the releasable documents the CAF relied on for the clearance-revocation decision and the CAF's consideration of the commander's letter without giving Mr. Wonders an opportunity to rebut what the letter said." Wonders, 659 Fed. Appx. at 647. Although the Federal Circuit later determined this was harmless error based on the specific facts in that case, i.e., that Wonders later received copies of all relevant documents and had an opportunity to substantively respond, id. at 649, that is not Arrington's situation.

It is beyond dispute that Arrington has not been provided all the documents relied upon by the Defendants in proposing the revocation of her security clearance. In fact, it should be

objectively apparent that she has been provided virtually no information that any reasonable person could utilize in order to prepare a substantive response.[2]

Thus, based on the binding rules, regulations and laws that apply, Arrington is likely to succeed on the merits of her claim that the Defendants have failed to provide her with the necessary "comprehensive" and "detailed" information, whether classified or unclassified, underlying the proposed revocation of her security clearance.

## III. ARRINGTON WILL SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF

Courts in this jurisdiction have recognized that "[t]he concept of irreparable harm does not readily lend itself to definition." Judicial Watch, Inc. v. Dep't of Homeland Sec., 514 F. Supp. 2d 7, 10 (D.D.C. 2007). Nonetheless, the D.C. Circuit has laid out "several well known and indisputable principles" that should underlie a court's analysis. Wisconsin Gas Co. v. Federal Energy Regulatory Com., 758 F.2d 669, 674 (D.C. Cir. 1985).

First, the party seeking preliminary injunctive relief must demonstrate that the claimed injury is "both certain and great" and "actual and not theoretical." Id. Second, the movant "must show that '[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" Id. (alterations in original), Ashland Oil, Inc. v. FTC, 409 F. Supp. 297, 307 (D.D.C. 1976). And, finally, the injury must be "beyond remediation." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).

---

[2] By letter dated November 22, 2021, DCSA released ninety-nine pages in response to two requests pursuant to the Freedom of Information/Privacy Acts that had been submitted on June 30, 2021, and November 1, 2021, respectfully. Exhibit "3-U". Nothing of substance, much less value, was released. Zaid Decl. at ¶20.

It borders on axiomatic that Arrington will be irreparably harmed if she is not timely provided with relevant facts that would enable a proper substantive response to the SOR. Without that information, Arrington is facing revocation of her security clearance which will then result in the guaranteed loss of her federal employment. See *https://www.usajobs.gov/ GetJob/ViewDetails/572884800* (position description noting individual must be able to obtain a Top-Secret security clearance and access to Sensitive Compartmented Information); Zaid Decl. at ¶23. It should be unquestioned that this injury would be "certain and great" and "actual and not theoretical".

If Arrington is not provided with comprehensive details as required by binding law, she is just weeks away from losing her security clearance and federal employment. That injury is imminent and thus there exists a "clear and present need" for the equitable relief sought by this Motion.

Without this information, the injury will ultimately be "beyond remediation", especially since this Court will lack jurisdiction based on Egan to challenge any substantive determination that led to the revocation of Arrington's security clearance.

## A. ARRINGTON'S CLEARED COUNSEL SHOULD BE PERMITTED ANY RELEVANT CLASSIFIED INFORMATION THAT IS BEING RELIED UPON BY THE DEFENDANTS

While this Motion focuses primarily on the Defendants' failure to abide by binding law to provide Arrington comprehensive and detailed unclassified information, the Defendants' obligation to provide proper due process should also be read to extend to the release of classified information through secure arrangements to Arrington and her cleared attorney as well. This Court knows full well the importance of the attorney-client relationship. See e.g., Caplin & Drysdale v. United States, 491 U.S. 617 (1989); Jacobs v. Schiffer, 204 F.3d 259 (D.C. Cir.

2000). "These cases affirm the First Amendment right to share information with an attorney when such sharing is necessary for an attorney to advise his client of his rights." <u>Shaffer v. DIA</u>, 601 F. Supp. 2d 16, 26 (D.D.C. 2009). For Arrington to properly respond to the SOR, she will need to have open and frank conversations with her undersigned attorney. <u>See</u> <u>Martin v. Lauer</u>, 686 F.2d 24, 32 (D.C. Cir. 1982)("Appellants' interest in speaking freely with their attorneys is interwoven with their right to effective assistance of counsel."). As the Supreme Court stated in <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 390-91 (1981), "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant." When that first step is compromised, as it has been here, Arrington suffered a concrete injury.

While it is Arrington's belief that significant additional comprehensive details can be legitimately provided to her that are unclassified, even if classified information is at issue due process is still required. And that includes providing access through a secure process to that information to Arrington's attorney. Arrington's primary counsel, Mark S. Zaid, currently holds an active TS/SCI security clearance, and is often provided with authorized access to classified information as part of his legal representation of federal employees and contractors. Zaid Decl. at ¶¶5,22. Upon information and belief, Mr. Zaid holds the proper level of access that would be permitted to share the information with him. <u>Id</u>. at ¶22. Without access to all the relevant information, Arrington's due process rights will be violated.

## IV.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OVERWHELMINGLY FAVORS GRANTING ARRINGTON PRELIMINARY RELIEF

In determining whether to grant a preliminary injunction "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief." Winter, 555 U.S. at 24 (internal quotation marks omitted). "In exercising their sound discretion, courts . . . should [also] pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. When the government is the party opposing a preliminary injunction, courts analyze the latter two factors as one "because the government's interest *is* the public interest." Pursuing Am.'s Greatness v. FEC, 831 F.3d 500, 505, 511 (D.C. Cir. 2016), citing Nken v. Holder, 556 U.S. 418, 435 (2009).

These two factors tilt in favor of Arrington. Most importantly, there will be no harm to the Defendants in requiring them to comply with binding law. Arrington is not seeking for the Court to require the Defendants to exceed their obligations but to simply meet them. There cannot be a stronger public interest than such a premise.

To be clear, Arrington has absolutely no qualms or hesitation to substantively respond to the Defendants' concerns regarding her continuing eligibility for access to classified information. A system exists to enable her to do just that, and she has every expectation that a fair and just process will eventually be provided to her. But until she is properly provided with the relevant comprehensive details, whether classified or unclassified, she is unable to participate in the process.

## **CONCLUSION**

For the foregoing reasons, Arrington respectfully requests this Court to enter an injunction in her favor.

Date: November 30, 2021

Respectfully Submitted,

_____/s/_____

Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for Arrington

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 30, 2021, a copy of the foregoing Memorandum of

Law was served by electronic and first-class mail, certified, return-receipt requested, to:

Caroline Crass
General Counsel
Department of Defense
The Pentagon
Washington, D.C. 20301–1155

Ariane Cerlenko
Acting General Counsel
National Security Agency
9800 Savage Rd. Suite 6272
Ft. George G. Meade Maryland 20755

Jay Fraude
General Counsel
Defense Security & Counterintelligence Agency
27130 Telegraph Road
Quantico, Virginia 22134

Elizabeth Shapiro
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530


_____/s/_____
Mark S. Zaid, Esq.