# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHERINE ARRINGTON | * |
| Plaintiff, | * |
| v. | * Civil Action No. 21-2669 (JEB) |
| DEPARTMENT OF DEFENSE et al. | * |

## DECLARATION OF MARK S. ZAID, ESQ.

The undersigned hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this declaration on personal knowledge. This declaration is submitted in support of the Plaintiff's Motion for Preliminary and/or Permanent Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and LCvR 65.1.

2. I am the primary attorney for Plaintiff Katherine Arrington ("Arrington"), who joined Defendant Department of Defense ("DoD") in 2019, as a highly qualified expert. Since 2020, she has been serving as a civilian employee in the Senior Executive Service as the Chief Information Security Officer for Acquisition and Sustainment to the Under Secretary of Defense for Acquisition and Sustainment. First Amended Complaint, Ecf. Dkt. 6, at ¶3 (filed November 11, 2021)("FAC").

## *BACKGROUND INFORMATION*

3. I am admitted to practice law in the States of New York, Connecticut, Maryland and the District of Columbia, as well as before the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and numerous federal district courts. I have been litigating cases involving the federal government for nearly three decades; essentially my entire professional legal career.

4. During over more than twenty-years, I have represented hundreds of federal employees and defense contractors in security clearance proceedings. This has included

defending suspensions, denials and revocations of security clearances, as well as assistance in completing the SF-86 Questionnaire for National Security Positions ("SF-86"), prepping for investigative and/or polygraph interviews and any other issues relating to security clearances. The Department of Defense's Office of Hearings & Appeals, which is the primary adjudicative body for adverse security clearance matters and one of the only agencies that publishes its decisions, lists dozens of my cases, which reflects one of the highest number of cases among practicing attorneys in this field. See *https://search.usa.gov/search?utf8= %E2%9C%93&affiliate=doha&sort_ by=&query=zaid*.

5. Not only do I handle security clearance matters but I have held eligibility myself up to the level of Top Secret/Sensitive Compartmented Information (otherwise commonly known as "TS/SCI") and Q (a clearance level utilized by the Department of Energy that is the basic equivalent of TS/SCI). I am routinely granted authorized access to classified information as part of my law practice and have been since 1996. As part of my own security clearance process, I have filled out numerous SF-86s and had background investigations conducted on me on several occasions.

6. Of additional relevance, since 2006, I have annually taught the D.C. Bar Continuing Legal Education class on "Defending Security Clearances". I have also taught multiple CLE classes on security clearances including for, among others, the Montgomery County (Maryland) and Federal Bar Associations, as well as frequently lecture on the topic at undergraduate/graduate institutions and before defense contractor associations across the country. I am also a recognized expert on the Freedom of Information Act ("FOIA"), and I was appointed by the Archivist of the United States to serve a two-year term (2014-2016) on the Federal FOIA Advisory Committee. I frequently handle FOIA cases involving challenges to the Government's classification decisions. I also served as the co-editor of the bi-annual publication of *Litigation Under The Federal Open Government Laws* from 2002 – 2012.

7. I have been named a Washington, D.C. Super Lawyer every year since 2009, (including being profiled), and have been repeatedly named a "Best Lawyer" in Washingtonian Magazine's bi-annual designation for my national security or whistleblower work. In 2021, the Magazine also named me one of D.C.'s Most Influential People in the category of *Legal Intelligentsia*. In 2020, the Washington Metropolitan Employment Lawyer's Association named me "Attorney of the Year" for my work on the Intelligence Community Whistleblower's case., I have also testified before Congress nearly a dozen times, including on security clearances and other national security matters.

8. Importantly, I was designated by a Court in 2017 as an expert on security clearances/facility clearances in Skipper v. Skipper, Case No. 13-C-16-107613 (Howard Ctny Cir Ct) and in 2018 for classification/prepublication national security review matters in Bissonnette v. Podlaski et al., 2018 U.S. Dist. LEXIS 94198, *55-*62 (N.D.Ind. June 5, 2018). I have also provided similar expert advice in several criminal and civil cases, including in courts sitting in Maryland, Washington, D.C. and California, but none of these cases required my court certification as an expert.

9. Based on much of the above, I am recognized by the news media as an expert in the area of security clearances, and I am frequently quoted in many print articles and often appear in radio and television interviews to discuss the topic. For example, two of my C-Span appearances discussing security clearances on July 30, 2018, and April 5, 2019, can be viewed here:

> *https://www.c-span.org/video/?449037-4/washington-journal-mark-zaid-discusses-security-clearances*
>
> *https://www.c-span.org/video/?459385-4/washington-journal-mark-zaid-discusses-security-clearances*

10. I have also written articles that relate to security clearances, including:

   *https://www.usatoday.com/story/opinion/2018/02/15/rob-porter-mess-reveals-broken-white-house-not-broken-security-process-mark-zaid-column/338776002/*

   *https://www.washingtonpost.com/outlook/2019/03/02/trump-can-give-anyone-he-wants-security-clearance-congress-can-ask-why/?utm_term=.f7e8c2486685* (co-authored with David Priess).

11. Finally, since 1998, I have served as the Executive Director of the James Madison Project (*www.JamesMadisonProject.org*), a Washington, D.C.-based organization, with the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. Furthermore, in 2017, I co-founded Whistleblower Aid (*www.WhistleblowerAid.org*), which provides pro bono representation to whistleblowers, including when adverse security clearance actions occur as part of retaliatory practice. Additionally, I have been a Lecturer at Johns Hopkins University since 2014, in the Global Security Studies program where I teach a course on "Legal Issues in National Security & Intelligence" (which includes a class discussing security clearances).

## *CHRONOLOGY AND RELEVANT EXHIBITS*

12. By Memorandum dated May 11, 2021, Arrington was formally notified by a security officer within the Office of the Under Secretary of Defense for Acquisition and Management that her security clearance for access to classified information was suspended. FAC at ¶7; Exhibit "1". It was noted in the Mamo that this "action is being taken as a result of a reported Unauthorized Disclosure of Classified Information and subsequent removal of access" by the NSA. It also warned Arrington that her actions might have constituted a federal crime. I have reviewed hundreds of security clearance

suspension memorandums over the years in my law practice and this "warning" was highly unusual, and frankly inappropriate, to include.

13. That same day I was retained by Arrington to help address and resolve any concerns held by DoD regarding her security clearance as well as any issues pertaining to her employment (which was formally suspended by Memorandum dated May 12, 2021, Exhibit "2"). Over the course of the next six months, I was (and continue to be) in repeated contact with DoD and its relevant components in – so far – an unsuccessful effort to learn relevant facts or resolve the alleged concerns. The following documents provide a window into the chronological and substantive efforts I undertook, much of which were completely ignored by the Defendants, in order to avoid a dispute and simply ensure Arrington was provided full due process as required by law.

- Exhibit "A" – May 13, 2021, separate e-mails to then DoD Acting General Counsel Elizabeth George and DoD security officer Jeremy Wall requesting to be put in touch with relevant security officials and attorneys, particularly to ensure all proper security protocols are met.

- Exhibit "B" – May 18, 2021, e-mail to then DoD Acting General Counsel Elizabeth George again requesting a response.

- Exhibit "C" – May 19, 2021, response from then DoD Acting General Counsel Elizabeth George informing me that Jay Fraude, General Counsel, Defense Counterintelligence and Security Agency ("DCSA"), will be my point-of-contact.

- Exhibit "D" – May 20, 2021, another attempt at e-mailing DoD security officer Wall with specific questions, none of which were ever responded to.

- Exhibit "E" – May 20, 2021, e-mail to Deputy Assistant Secretary Jesse Salazar reiterating outstanding questions, requests to discuss the situation with relevant officials and expressing dismay as to how the process is being handled. No response from Deputy Assistant Secretary Salazar was ever received.

- Exhibit "F" – May 20, 2021, e-mail to DoD Office of Inspector General seeking to verify whether any open investigation of Arrington exists. In a May 21, 2021, response DoD OIG confirms there is no investigation.

- Exhibit "G" – May 21, 2021, e-mail from DCSA Office of General Counsel confirming there is no DCSA investigation of Arrington underway.

- Exhibit "H" – May 21, 2021, e-mails to DoD security officer Wall and Deputy Assistant Secretary Salazar notifying them of DoD OIG response and again requesting to know what agency/component is undertaking an investigation of Arrington.

- Exhibit "I" – May 21, 2021, e-mail to National Security Agency ("NSA") attorneys inquiring as to NSA's present involvement and request to discuss classification issues. No substantive response was ever received.

- Exhibit "J" – May 24, 2021, e-mail to NSA attorneys in order to demonstrate proof of NSA's involvement.

- Exhibit "K" – May 28, 2021, e-mail from then Acting DoD General Counsel George indicating that the matter has been "consolidated" with DCSA and pointing again to DCSA's General Counsel as point-of-contact.

- Exhibit "L" – June 29, 2021, e-mail from DCSA General Counsel Fraude again acknowledging that DCSA still does not have an active investigation or open adjudication involving Arrington.

- Exhibit "M" – July 12, 2021, e-mail to attorneys within DoD, DCSA and NSA in order to again try to resolve the issues.

- Exhibit "N" – By Memorandum dated July 14, 2021, DoD Consolidated Adjudications Facility ("CAF") requested Arrington to complete another SF-86 as, according to a July 14, 2021, e-mail from DCSA General Counsel Fraude, "part of the CAF process in response to information we're receiving from other DoD Components. We are continuing to work deliberately and diligently to obtain information from within DoD as a necessary preliminary step in the adjudication process."

- Exhibit "O" – August 24, 2021, e-mail from DCSA General Counsel Fraude that "We still have leads to address prior to setting up any interviews with your client."

- Exhibit "P" – September 13, 2021, e-mail sent to DCSA and NSA advising them that Arrington is willing to sit for an appropriate polygraph examination to address any concerns. No response was ever received.

- Exhibit "Q" – September 17, 2021, e-mail from DCSA General Counsel Fraude indicating "There are still leads with the investigators that have not been completed yet. At this point, I can't share details about the focus or nature of the

- leads. Your client will get an opportunity to respond to anything of adjudicative significance."

- Exhibit "R" – November 3, 2021, e-mail to DoD, DCSA and NSA expressing concerns about the Statement of Reasons ("SOR") and identifying the deficiencies and inviting the now Defendants (this lawsuit was filed on October 12, 2021) an opportunity to address the issues.

- Exhibit "S" – November 4, 2021, e-mail from DCSA OGC responding that the SOR is legally sufficient.

14. On October 12, 2021, after largely being ignored, as described above, I filed the instant lawsuit on behalf of Arrington against DoD, which answers for DCSA and CAF, as well as NSA (collectively "Defendants"). Ecf. Dkt. 1. Initially the lawsuit sought to compel agency action that had been unreasonably delayed.

15. By Memorandum dated October 28, 2021, without ever interviewing Arrington (or for that matter, upon information and belief, interviewing anyone), the DoD CAF issued a SOR proposing revocation of Arrington's eligibility for access to classified information based on Adjudicative Guideline K: Handling Protected Information. Exhibit "4". In light of this action, Arrington filed a First Amended Complaint as a matter of right in order to challenge the procedural deficiencies in the SOR. Ecf. Dkt. 6.

16. The SOR cited to four legal references that control the procedural and substantive process by which this security action is governed. Exhibit "4"; FAC at ¶13. While the SOR noted that the Air Force Office of Special Investigations ("AFOSI") reviewed the details of the incident and concluded on May 13, 2021, that it "could not identify any nefarious intent which would warrant a criminal or counterintelligence investigation at this time," no substantive facts were provided – in violation of the governing laws and regulations that bind the Defendants – that meaningfully permit Arrington to respond to the SOR. Id. at ¶14; Exhibit "4".

17. For example, Arrington was not informed of the type or nature of the information, which was identified only as "Top Secret", that was disclosed. Nor was Arrington even told the date upon which the alleged incident occurred or provided specific identification of the person or entity to whom Arrington allegedly released this classified information. In fact, not one additional substantive fact was provided beyond what was stated in the initial suspension memorandum dated May 11, 2021. Cf. Exhibit "1" with Exhibit "4". No reference was made in the SOR that this information could not be provided, or that available binding due process procedures were not available due to classification concerns. FAC at ¶15. Other than the alleged information that was said to have been disclosed, upon information and belief none of this information would be considered classified.

18. Additionally, the SOR also alleged that Arrington failed to personally report the alleged security violation, "as required", but no supporting citation was identified to demonstrate what requirement was violated. The most basic facts underlying the SOR were completely withheld from Arrington in contravention of numerous applicable laws. Id. at ¶16. Upon information and belief, this information would not be considered classified.

19. Although the circumstances surrounding the allegations against Arrington occurred in May 2021, and while AFOSI was able to sufficiently review the situation in just a matter of days in order to determine that no criminal or counterintelligence investigation was warranted, the Defendants suspiciously refused to conduct even a routine substantive investigation of the allegations. Not even Arrington herself was interviewed, much less asked, even though it was offered. Indeed, upon information and

belief, the entire matter could have been easily resolved within a week or two through a handful of interviews of key witnesses, all of whom are known to the Defendants. Id. at ¶19.

20. My firm also sought to obtain relevant documents pertaining to DCSA's involvement by submitting a Freedom of Information/Privacy Act request on June 30, 2021. After we received Arrington's SOR, we also submitted a request on November 1, 2021, for the underlying records relied upon by DoD CAF for its proposed revocation. DCSA responded by letter dated November 22, 2021, and released ninety-nine pages. Exhibit "T". The list of documents was identified as:

DCSA FOIA and Privacy Office for Adjudications
(DOD CAF records) (Attached):
- Email from attorney Mark S. Zaid to Ms. Lisa Turner, dated May 21, 2021 Additional documents
- Defense Information System for Security (DISS) Incident Report, dated May 7, 2021
- DoD CAF Memorandum, Subject: Supplemental Information Request, dated July 14, 2021
- Acknowledgement of Receipt for Supplemental Information Request, dated July 15, 2021
- Electronic Questionnaires for Investigations Processing (e-QIP), dated July 15, 2021
- DoD CAF Memorandum, Subject: Instructions for Handling Statement of Reasons, dated October 28, 2021
- Acknowledgement of Receipt of Statement of Reasons, dated November 1, 2021

AFOSI:
- Email exchange between AFOSI and OUSD, dated May 13, 2021

OSD/JS:
- Office of the Under Secretary of Defense Memorandum, Subject: Notification of Suspension of Classified Information, signed May 11, 2021

Id. Over sixty of the pages were nothing more than Arrington's SF-86 form she had completed in July 2021. Only one of those pages, which was the initial Incident Report entry for the Defense Information System for Security, was not already in our possession.

Exhibit "U". It provides no new information. In fact, it contains factual errors, such as stating DoD's Office of Inspector General was conducting an investigation. Yet that office made it clear to me it had no such investigation underway. Exhibit "3-F". Nine unknown pages were withheld in full. We have appealed the sufficiency of the DCSA release but no further response has been received.

21. At this stage all Arrington wants is a fair opportunity to substantively respond to the allegations through the standard administrative process and clear her good name. Although, as noted, multiple efforts were made by Arrington's counsel to avoid this litigation and this filing, the Defendants refused to cooperate in any way thereby forcing this unusual step. Id. at ¶20.

22. I have handled hundreds of security clearance cases across the spectrum of the U.S. government. This SOR is one of the sparsest by way of details I have ever reviewed, and frankly likely the worst I have encountered with these specific Defendants. The lack of legitimate comprehensive details, whether classified or unclassified, will preclude any reasonable or legitimate opportunity to craft a proper response for Arrington.

23. As previously noted, I currently hold an active eligibility for a TS/SCI security clearance. If there is relevant classified information that is involved in this process, that does not negate Arrington's lawful right to be informed of the details in order to properly respond. There are applicable DoD regulations that exist that govern the use of classified information in security clearance proceedings. See e.g., DoDD 5220.6, Encl. 3, E3.1.12. ("A hearing shall be open except when the applicant requests that it be closed, or when the Administrative Judge determines that there is a need to protect classified information or there is other good cause for keeping the proceeding closed."). Upon information and

belief, I hold the proper level of access that would be allow the Defendants to share the relevant information with me.

24. Arrington requires a security clearance in order to perform her employment responsibilities with DoD. Exhibit "U". Without a security clearance, she will be terminated from her position. *https://www.usajobs.gov/GetJob/ViewDetails/572884800* (position description noting individual must be able to obtain a Top-Secret security clearance and access to Sensitive Compartmented Information). This is beyond dispute.

25. Arrington's response to the SOR is currently due to be submitted on or before January 3, 2022. Based on the facts of this case, and the impending deadline, it is essential this Court respectfully expedites the resolution of this Motion.

I do solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge.

Date: November 29, 2021

                                                  *s/Mark S. Zaid, Esq.*
                                                  _____
                                                  Mark S. Zaid, Esq.